# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
LOREN LYNETTE MACHUCA,
on behalf of J.A.M., a minor,

　　　　　　　Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

　　　　　　　Respondent.
* * * * * * * * * * * * * * * * * * * *

No. 20-18V
Special Master Christian J. Moran

Filed: July 17, 2020

equitable tolling, discriminatory treatment

Christopher Lee Phillippe, Christopher Lee Phillippe, PC, Brownsville, TX, for petitioner;
Jennifer L. Reynaud, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION DISMISSING CASE[1]

　　Ms. Machuca alleges that her son, J.A.M., received an influenza vaccination on December 15, 2015. Pet., filed Jan. 6, 2020, ¶ 4. Ms. Machuca further alleges that J.A.M. developed shoulder problems within 48 hours of vaccination. Id. ¶ 11. Ms. Machuca claims compensation for J.A.M.'s shoulder injury related to vaccine administration ("SIRVA"). Id. ¶ 10.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. This posting will make the decision available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

As the parties recognize, Ms. Machuca filed the present action beyond the time permitted by the statute of limitations. While Ms. Machuca argues that the running of the statute of limitations should be equitably tolled, her contentions lack merit. Specifically, Ms. Machuca has demonstrated neither extraordinary circumstances nor diligence in filing this case approximately nine months after the statute of limitations expired. Thus, the case is dismissed.

## **Background**

Information relevant to Ms. Machuca's pending case falls into three categories: (1) the events that happened to her son, (2) the procedural history in the first case, and (3) the procedural history in the pending case.

### Events for J.A.M.

J.A.M. was born in 2008. At age 7, he saw his pediatrician, Anil K. Batta, for behavioral problems and primary care, including common illnesses such as fever and sore throat. Although Ms. Machuca was giving her son prescribed medication for behavioral issues, including ADHD, he remained "very hard to handle at school." Exhibit 1 at 4-5 (April 9, 2015). Dr. Batta referred J.A.M. to Tropical Texas Behavioral Health for a psychological evaluation. Id. (Whether J.A.M. received any treatment at Tropical Texas Behavioral Health is not clear as Ms. Machuca has neither filed any treatment records nor filed a status report or affidavit explaining that no records exist. See Resp't's Mot. at 4 n.7.)

J.A.M. received therapy from Sunshine Rehab, where therapists described high distractibility, impulsive behavior, aggressive tendencies, and poor comprehension. Exhibit 1 at 2. These reports continued in 2015. See exhibit 2 at 7, 11.

J.A.M. received the flu vaccine that allegedly harmed him on December 15, 2015. The vaccine was administered into his right arm. Exhibit 1 at 18.

At the next therapy appointment, which was on December 28, 2015, the therapist documented that he had "high distractibility, excessive energy, impulsive behaviors, poor safety awareness, and no fear/understanding of possible damages for self or others." Exhibit 2 at 17. The therapist assessed J.A.M. as suffering from ADHD, developmental delay, and characteristics of oppositional defiant disorder. There is no reference in the therapist's records to shoulder pain or limited range of motion.

J.A.M. saw Dr. Batta on February 10, 2016, which was approximately two months after the vaccination. Dr. Batta noted ADHD. However, J.A.M. was otherwise doing well. Exhibit 1 at 19-20. Dr. Batta did not document that J.A.M had any shoulder problems at this visit.

In 2016, J.A.M. saw Dr. Batta, therapists, and a physician's assistant for a psychiatric interview. At the end of 2016, J.A.M. underwent an EEG, and Rafael Mimbela, a pediatric neurologist, reviewed the results. Dr. Mimbela determined that the EEG was abnormal and could predispose him to generalized epilepsy. Exhibit 4 at 1-2.

Ms. Machuca has not filed any medical records from after 2016. None of the medical records filed by petitioner document that J.A.M. experienced shoulder pain or problems with range of motion following vaccination.

Procedural History in 17-368V

Ms. Machuca filed a petition, docketed as 17-368V, on March 20, 2017. Pursuant to 42 U.S.C. § 300aa–11(b)(1)(A), Ms. Machuca filed on behalf on J.A.M, her minor child.  Her attorney was Omar Rosales. Around this time, Mr. Rosales filed petitions for approximately 28 other people. These cases, including Ms. Machuca's case, were assigned to Special Master Hastings.

Ms. Machuca's petition was three pages in length and contained 12 paragraphs. The petition alleged that the December 15, 2015 flu vaccination caused J.A.M. to suffer an anxiety disorder, which Dr. Mimbela diagnosed on December 30, 2016. Pet. ¶¶ 5, 7. Petitioner did not allege that J.A.M. sustained a shoulder injury. Although the petition referenced medical records, Ms. Machuca did not file any exhibits with the petition. Thus, at this time, Ms. Machuca had not filed any medical records corroborating her claims.

On March 30, 2017, Special Master Hastings conducted a status conference, which was digitally recorded.[2] At the onset, Special Master Hastings informed Attorney Rosales that he expected to retire at the end of July. First Tr. 7; see also First Tr. 57. Special Master Hastings discussed that for a case in which the petitioner was alleging that a flu vaccine caused a condition not listed on the

---

[2] The transcript from this status conference appears in the appendix to the motion to dismiss, pages 25-50. Each page of the appendix reproduces four pages of the miniscript transcript. For example, transcript pages 5-8 are appendix page 26. This decision cites to specific pages of the transcript as "First Tr."

Vaccine Injury Table, the petitioner would need to get an expert report and Mr. Rosales agreed that he could submit an expert report. First Tr. 17-22. In the absence of an expert report, Special Master Hastings stated that he would be inclined to find that all of Mr. Rosales's cases lacked a reasonable basis. First Tr. 28. Attorney Rosales stated that he would find experts to supplement the petitioner's position on causation. First Tr. 30. Special Master Hastings again counseled that the petitioners had to have some proof of causation. First Tr. 44-50.³

    The order from this status conference was consistent with the oral statements during the status conference. The order explained that the cases Attorney Rosales had filed "at first glance, do not include allegations that would be sufficient to establish entitlement to a Program award or even to establish a 'reasonable basis' for the case sufficient to justify an award of attorneys' fees or costs for filing the cases." Order, issued April 3, 2017. Accordingly, Special Master Hastings stayed the case for 180 days to allow counsel to investigate the vaccinee's medical history and to determine whether evidence could support an allegation that a vaccine harmed the child.

    Special Master Hastings subsequently modified the April 3, 2017 order. Instead of requiring Attorney Rosales to investigate 28 cases in 180 days, Special Master Hastings directed Attorney Rosales to investigate 8 cases in 60 days. Ms. Machuca case was one of those eight cases that Special Master Hastings directed Attorney Rosales to advance. Accordingly, Mr. Rosales was directed to determine whether he wanted the case to proceed by June 26, 2017. In the cases that were proceeding, the petitioner was ordered to file an amended petition and all medical records. Order, issued April 26, 2017.

    For two of eight cases Special Master Hastings had advanced in the April 26, 2017 order, Special Master Hastings conducted another status conference on June 21, 2017.⁴ In those cases, before the status conference, Mr. Rosales amended the petition and included an allegation of SIRVA.⁵ The topics discussed during the

---

³ It appears that in collection of the 28 cases assigned to Special Master Hastings, the petitions sought compensation for injuries not listed in the Vaccine Table. Thus, the petitioners would be required to establish causation-in-fact.

⁴ The transcript for the June 21, 2017 status conference is cited by transcript page as "Second Tr."

⁵ Effective March 21, 2017, the Secretary amended the Vaccine Injury Table to associate SIRVA with vaccines. 82 Fed. Reg. 113201 (Feb. 22, 2017).

status conference implicate and foreshadow some of the issues raised in the current case.  Thus, extensive quotations follow.  Special Master Hastings questioned the basis for a SIRVA claim:

> But there was absolutely no evidence in either record that the Petitioner ever suffered from SIRVA.  And SIRVA is a pretty distinctive thing . . .
>
> I find it really highly strange that SIRVA wasn't alleged in the original petition, either one, and then was just alleged in the -- in the amended petition in each of those cases.  And then when I looked at the records, there was just no -- still no -- no record to indicate that they ever had any signs of SIRVA or that any of their other symptoms were ever judged to be vaccine-caused by a physician.

Second Tr. 4.  Special Master Hastings elaborated that SIRVA cases are based upon medical records:

> You [Mr. Rosales] alleged SIRVA but there's no evidence of it. . . . [Shoulder injuries] are really easy to see in the medical records themselves.  The person comes back a day later, two days later, and their shoulder is all swollen up and they can't move it.  That's very – those are almost very clear from the medical records.  That doesn't seem to be the case in either [of the two cases under discussion] unless I missed some medical records.

Second Tr. 12.

    Partially in response, Mr. Rosales commented that Special Master Hastings was not evaluating the cases fairly.  He stated:

> [I]t feels like you're placing my clients, you know, under a different microscope.  And I'm just asking that my clients be treated fairly, judge.  Just because they're poor, just because they're indigent and Hispanic doesn't mean they should be treated differently, Your Honor.

Second Tr. 16.

5

Special Master Hastings responded, outlining what petitioners need to establish.

> Well, I'm sorry I hurt your feelings, and I can guarantee you that – that there has been no discrimination. It has nothing to do with them being Hispanic. There's no – there's no discrimination. I certainly reject that – that suggestion, too.
>
> But, you're going to have to – you need – you need some proof that a vaccine caused an injury . . . and the injury lasted six months or longer.

Second Tr. 16.  In direct response, Mr. Rosales stated:

> [W]e will get the expert reports for those cases you identified, Your Honor, and I've assembled all the medical records, so it paints a much better picture. We'll review those things, Your Honor, absolutely.

Second Tr. 16.

Special Master Hastings accepted Mr. Rosales's effort to review the cases. Special Master Hastings stated:

> So I encourage you to take – to take a look at your 28 cases and – and punt on the ones that don't have – that you can't find any real connection. And if there's any that you can find a real connection, then concentrate on litigating those.

Second Tr. 18.

Within a week of the June 21, 2017 status conference, Mr. Rosales filed a status report in Ms. Machuca's case, announcing her intention to file medical records, to amend the petition to allege SIRVA, and possibly to obtain an expert. Given Ms. Machuca's later argument regarding equitable tolling, her representations regarding an expert are important to document. She stated: "After further review, if the Court determines that an Expert report is necessary to substantiate and augment the claim, Petitioner's counsel will hire an expert and provide the Court with the expert's opinion within 30 days of the Court's order." Pet'r's Status Rep., filed June 26, 2017, ¶ 5.

6

Special Master Hastings found that the June 26, 2017 status report, which announced an *intention* to file documents, did not comply with the April 26, 2017 order, which required the *filing* of documents.  However, Special Master Hastings allowed petitioner until July 10, 2017, to file the required documents.

On July 10, 2017, Ms. Machuca filed a set of medical records (exhibits 1-4).  CM/ECF 11.  On that same day, Ms. Machuca filed an amended petition.  The amended petition, which is not a model of clarity, recognized that J.A.M. had "minor ADHD" before the December 15, 2015 vaccination.  Am. Pet. ¶ 5.  It states J.A.M. "developed SIRVA" and, due to the vaccination and SIRVA, J.A.M. "experienced sharp stabbing pain, tingling, difficulty sleeping on the affected side, discomfort, and anxiety."  Id. ¶ 7.  The amended petition cited exhibit 5.  However, Ms. Machuca had not filed any document labelled "exhibit 5."  Similarly, the absent exhibit 5 is cited in support of an allegation that J.A.M.'s symptoms "began within 48 hours of vaccination."  Id. ¶ 12.  In addition to alleging SIRVA, the amended petition maintained that J.A.M. "was diagnosed with increased anxiety, and an increased level of mood swings, behavioral problems, disturbances, and inattention shortly after the vaccination.  The diagnosis occurred on 12/28/2015."  Id. ¶ 8.

Special Master Hastings directed Ms. Machuca to obtain a report from a reputable and qualified medical doctor opining that J.A.M. "suffered a *specific* vaccine-caused injury, and *explaining such opinion in detail*."  Order, issued July 12, 2017.  This order set the deadline as August 11, 2017.  The order continued that if counsel did not file such an expert report, "***the case will be dismissed for failure to prove a vaccine-caused injury.***"  Id.

The recounting of the procedural history of case 17-368V must pause.  Information from the pending case (docket 20-18V) shows that Ms. Machuca signed an affidavit on July 21, 2017.  However, Ms. Machuca did not file this affidavit into the docket for case 17-368V.  The affidavit in docket 20-18V says that immediately after the vaccination, J.A.M. told Ms. Machuca that her arm was hurting and he had difficulty sleeping on his affected side  Likewise, Ms. Machuca obtained a report from Mark Levin, a doctor board-certified in internal medicine and oncology.  Dr. Levin's report is dated July 17, 2017.

Without filing the petitioner's affidavit or Dr. Levin's report in case 17-368V, Attorney Rosales submitted a one-sentence document on August 14, 2017.

This document states, "Petitioner files this notice of voluntary dismissal in accordance with Rule 21(a)(1)(A)."[6]  Pet'r's Notice.

In accord with this notice, on August 14, 2017, Special Master Hastings issued an order concluding proceedings in case number 17-368V.  In accordance with Rule 21(a)(1)(A), Special Master Hastings directed the Clerk not to enter Judgment.  Ms. Machuca did not seek attorneys' fees or costs.  Although not noted in the docket, Special Master Hastings retired from the Office of Special Masters in September 2017.

Procedural History in 20-18V

Represented by Attorney Christopher Phillippe, Ms. Machuca filed the pending case on January 7, 2020.  With her petition, Ms. Machuca filed six exhibits.  The first four exhibits match the four exhibits filed in the previous case.  Exhibit 5 is Ms. Machuca's affidavit, signed July 21, 2017.  Exhibit 6 is the July 17, 2017 report from Dr. Levin.

The January 7, 2020 petition begins with a recitation of events in J.A.M.'s life and the recitation in paragraphs 1-15 is similar to (but not identical to) the recitation of events in the July 10, 2017 amended petition from the previous case.  The January 7, 2020 petition then adds a request for equitable tolling on the basis that Special Master Hastings had previously required an expert report for a SIRVA claim.  See Pet. ¶¶ 16-19.

The undersigned discussed how to resolve the equitable tolling issue in a status conference held on March 3, 2020.  The undersigned directed the parties to submit written arguments.  Order, issued March 3, 2020.  The parties have made those submissions, making the issue ready for adjudication.

## Analysis

While the main issue is whether equitable tolling can save this case, the preliminary issue is whether the statute of limitations would otherwise bar the action.  The Vaccine Act limits the time in which a claim may be filed.  The Vaccine Act states that:

---

[6] For Voluntary Dismissals, Vaccine Rule 21(a)(1) provides: "Petitioner may dismiss the petition without order of the special master of the court by filing:
(A) a notice of dismissal at any time before service of respondent's report."

> In the case of . . . a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of significant aggravation of such injury.

42 U.S.C. §§ 300aa-16(a)(2). Therefore, to be timely, a petitioner must file a Vaccine Program petition within 36 months of the presentation of the first symptom of an alleged vaccine-related injury. "[T]he statute of limitations begins to run on a specific statutory date: the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury recognized as such by the medical profession at large." Cloer v. Sec'y of Health & Human Servs., 654 F.3d 1322, 1340 (Fed. Cir. 2011) (en banc). The cause of action accrues on the date when the first sign or symptom of injury appears, not when a petitioner knew or reasonably should have known about the injury or its cause. Id. at 1338-39.

Furthermore, "a discovery rule cannot be read into the Vaccine Act statute of limitations." Id. at 1339. The Federal Circuit stated that equitable tolling under the Vaccine Act due to a petitioner's "unawareness of a causal link between an injury and administration of a vaccine is unavailable." Id. at 1345.

Here, Ms. Machuca filed the present case outside of the time permitted by the statute of limitations. According to the petition, J.A.M. experienced SIRVA symptoms within 48 hours of his December 15, 2015 vaccination. Pet. ¶¶ 4, 12. Assuming that this allegation is accurate for purposes of ruling on a motion to dismiss (see Goetz v. Sec'y of Health & Human Servs., 45 Fed. Cl. 340, 340 (1999)), then the SIRVA claim accrued no later than December 17, 2015. Because SIRVA was added to the Vaccine Injury Table on March 21, 2017, the statute of limitations required the petitioner to file this case by March 21, 2019. 42 U.S.C. § 300aa–16(b).

Relying upon Ramona Inv. Grp. II v. United States, No. 12-652C, 2014 WL 7129717 (Fed. Cl. Dec. 15, 2014), and Standard Space Platforms Corp. v. United States, 38 Fed. Cl. 461, 467 (1997), the Secretary further argues that Ms. Machuca's voluntary dismissal of her 2017 claim does not toll the statute of limitations. See Resp't's Mot. at 8-9. Ms. Machuca did not directly respond to this argument, leaving it unrebutted. Instead of arguing that she filed her case

within the period allowed by the statute of limitations, Ms. Machuca relies upon the doctrine of equitable tolling. See Pet'r's Resp., filed June 1, 2020, at 6-9.

According to Cloer, equitable tolling of the statute of limitations may occur in "extraordinary circumstances," such as when a petitioner is the victim of fraud or duress, or when a procedurally deficient pleading was timely filed. Cloer, 654 F.3d at 1344-45 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Equitable tolling may not apply simply because the statute of limitations deprives a petitioner of his or her claim. Cloer, 654 F.3d at 1344.

To establish equitable tolling, a litigant must establish diligence and extraordinary circumstances. Holland v. Florida, 560 U.S. 631, 649 (2010). Both topics are discussed below.

Diligence. To support her invocation of equitable tolling, Ms. Machuca argues that she has shown "*diligent effort* by re-submitting her claim with an expert report and pointing out the deficiency with the prior Special Master's decision." Pet'r's Resp. at 8.

However, Ms. Machuca has not explained what efforts she took to file her case within the time permitted by the statute of limitations. The most mysterious aspect is that Ms. Machuca appears to have had in her hand the report from Dr. Levin *before* she filed her motion to voluntarily dismiss case number 17-368V on August 14, 2017. The report from Dr. Levin, which is Ms. Machuca's basis for establishing her diligence, is dated July 17, 2017. While Dr. Levin does discuss SIRVA, the critical question in consider equitable tolling is diligence. Ms. Machuca has not offered any explanation why she did not submit this report in case 17-368V or re-file her petition before the date the statute of limitations for a SIRVA claim expired. Thus, Ms. Machuca has not shown she was diligent in attempting to file her petition within the time permitted by the statute of limitations.

Extraordinary Circumstances. To establish the extraordinary circumstances required to justify equitable tolling, Ms. Machuca points to Special Master Hastings's order for her to obtain an expert report. Ms. Machuca argues that Special Master Hastings imposed this requirement because he wanted to deny a Hispanic petitioner her day in court to receive compensation. Pet'r's Resp. at 5-8. This argument is flawed in multiple respects.

First, the order to obtain an expert report was not particularly extraordinary or burdensome because, as discussed above, Mr. Rosales did obtain the report from Dr. Levin within the time Special Master Hastings permitted. Thus, even if the order to obtain an expert report was somehow unfair or burdensome--a point rejected below--Ms. Machuca could have met the requirement. Ms. Machuca has not explained why Attorney Rosales did not file the expert report in case number 17-368V.

Second, the requirement to obtain an expert report was not only reasonable, but statutorily prescribed. A special master may not rule in a petitioner's favor based on petitioner's claim alone, without the support of medical records or medical opinion. 42 U.S.C. § 300aa-13(a)(1); Shyface v. Sec'y of Health & Human Servs., 165 F.3d 1344, 1349 (Fed. Cir. 1999). Though Ms. Machuca's July 20, 2017 amended petition literally asserted SIRVA, the evidentiary basis for that assertion was lacking. In the medical records, there are no complaints about a shoulder problem.[7] Furthermore, the amended petition alleged that SIRVA caused J.A.M. to suffer "an increased level of mood swings, behavioral problems, disturbances, and inattention." Am. Pet. ¶ 8. Even assuming that there was an evidentiary basis for a shoulder injury, a petitioner would still need an expert to explain how a shoulder problem caused "behavioral problems." Contrary to Ms. Machuca's assertion that Special Master Hastings discriminated against her by requiring an expert report or medical evidence, he actually provided her an opportunity and encouraged her to obtain this evidentiary support, which would have been essential for any ruling in her favor.

Third, Ms. Machuca did not object to the order requiring her to provide an expert report. In the March 30, 2017 status conference (First Tr. 30), in the June 21, 2017 status conference (Second Tr. 16), and in the June 26, 2017 status report, Mr. Rosales expressed a willingness to obtain an expert's report. Ms. Machuca's request for voluntary dismissal does not complain about the requirement for an expert report. Furthermore, Ms. Machuca did not file a motion for review or otherwise take steps to preserve any objection she had to obtaining an expert report.[8]

---

[7] Ms. Machuca did not file "exhibit 5" in her initial case.

[8] In fact, by voluntarily dismissing and allowing an order concluding proceedings to enter, Ms. Machuca opted to forego judgment and precluded herself from filing a motion for review. Ms. Machua also did not file a motion to recuse, which would have been an appropriate avenue of relief if she believed Special Master Hastings's actions were discriminatory.

Fourth, Ms. Machuca has presented no evidence that Special Master Hastings discriminated against her based upon her race or national origin. The problem in Ms. Machuca's original case was two-fold. She presented no evidentiary basis for a claim that the flu vaccine injured J.A.M.'s shoulder, meaning she could not meet the requirements to enjoy a presumption of causation afforded to on-Table cases. In fact, only a few medical records were filed in this case, none of which included complaints about a shoulder injury or any other indication of a physical injury. She also did not file an expert report to support an off-Table case.

Accordingly, Ms. Machuca has not demonstrated that any extraordinary circumstances prevented her from filing a case within the time the statute of limitations permits. Because of this failure and because she failed to show diligence in pursuing her rights, she has not shown that the running of the statute of limitations should be equitably tolled.

## Conclusion

The Secretary's motion to dismiss is granted. Ms. Machuca filed the petition outside of the time permitted by the statute of limitations. She also has not shown that equitable tolling is appropriate based upon the evidence.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master